**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
WALTER ANDERSON,                    :
                                    :   Civil Action No. 09-4683 (RMB)
            Petitioner,             :
                                    :
       v.                           :        O P I N I O N
                                    :
PAUL SCHULTZ,                       :
                                    :
            Respondent.             :
_____ :

**APPEARANCES:**

Walter Anderson, Pro Se          Irene E. Dowdy
#27981-016                       Assistant U.S. Attorney
FCI Fairton                      Office of the U.S. Attorney
P.O. Box 420                     401 Market Street, 4th Fl.
Fairton, NJ 08320                Camden, NJ 08101
                                 Attorney for Repondent

**BUMB, District Judge**

   Petitioner Walter Anderson, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  On December 14, 2009, he submitted an amended petition.  The sole respondent is Warden Paul Schultz.

On March 30, 2010, Petitioner filed a motion for summary judgment, which remains pending.  On May 21, 2010, Respondent filed an answer to the amended complaint, and the relevant record of the case.  Petitioner responded to the answer on June 17, 2010, and filed three additional motions that remain pending: a motion to schedule a hearing, a motion requesting adjudication, and a second motion requesting adjudication.

This Court has reviewed all submissions.  For the following reasons, the amended petition must be denied and the motions must be dismissed.

## BACKGROUND

On March 27, 2007, Petitioner was sentenced in the United States District Court, District of Columbia, to a total term of 108 months for convictions for Tax Evasion and Fraud, in

---

[1]   Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.

(c) The writ of habeas corpus shall not extend to a prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

violation of the United States Code.  His projected release date, assuming good conduct time, is December 29, 2012.

Petitioner sought to participate in the Bureau of Prisons' 500-hour Residential Drug Abuse Treatment Program ("RDAP"), upon completion of which he would be eligible for consideration for a reduction in the term of his imprisonment of up to one year.  The BOP determined that Petitioner did not meet the eligibility criteria for participation in the Program, based upon the fact that he did not have a record of substance abuse during the twelve-month period immediately preceding his incarceration in February 2005.

Specifically, on December 8, 2009, the Bureau of Prisons ("BOP"), through its Drug Abuse Program Coordinator, reviewed Petitioner's file for a determination of whether Petitioner had a substance abuse disorder.  Utilizing Petitioner's Pre-Sentence Report ("PSR"), the Coordinator found a section labeled "Substance Abuse."  It read:

> The defendant reported he began using marijuana at the age of 16, and used on a "sporadic" basis until 2002. He also reported that at the age of 18, he began using cocaine on a "sporadic" basis and last used in 2002. It is noted that on March 19, 2002, federal agents of the Internal Revenue Service executed a search warrant at the defendant's residence, and found psilocin, cocaine, hydrochloride, marijuana, and ecstasy. Superior Court records reflect that the defendant was subsequently convicted in this case.  A urine test was not completed by the probation office due to his incarceration.

The criminal conviction referred to in the PSR was in the Superior Court of District Columbia.  As to that conviction, Petitioner was arrested on December 24, 2003, after a 2002 search warrant revealed drugs and drug paraphernalia in his home.  He was sentenced to a fine, one year of probation, 14 days electronic monitoring, and community service.

The Drug Abuse Program Coordinator, in determining Petitioner's eligibility for RDAP, found that the PSR did not support a history of substance abuse within the 12-month period preceding Petitioner's February 2005 arrest for tax evasion and fraud, citing the following reasons: (1) Petitioner's admission that he had not used drugs since 2002; and (2) Petitioner's prior conviction for drugs occurred on March 19, 2002, when the search warrant was executed at his residence.  The Coordinator informed Petitioner on December 8, 2009, that he did not qualify for enrollment into RDAP.  However, Petitioner was offered enrollment into a non-residential drug abuse program, for which he would not receive early release consideration.  Petitioner has not sought to participate in the non-residential program.

Petitioner initiated an administrative review of the denial of his request to participate in the RDAP, and the BOP agrees that he has exhausted the issue.[2]

---

[2]  The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any

Petitioner argues in his amended petition that "he is not challenging the criteria that has been established by the BOP in relation to determining who should be eligible for the RDAP." (Am. Petition, p. 3). Instead, he argues that the BOP is not "fairly and appropriately administering the evaluation process based on these rules." Id. Petitioner argues that the BOP is "taking an excessively narrow view of what constitutes 'documentation' of drug abuse and is refusing to consider anything outside of the specific and limited form of documentation." Id. Petitioner notes that in 2002, he stopped using cocaine only and continued abusing other drugs, that he has a lifetime history of drug abuse, that he has a conviction for possession that occurred in July of 2007. Petitioner notes that

---

aspect of their confinement." See 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. See 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. See 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. See id. Appeal to the General Counsel is the final administrative appeal. See id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

5

the Coordinator suggested that possession "did not prove use," and other problems with the evaluation process.  See id. at pp. 4-5.

Respondent contends that this Petition should be denied because the BOP reasonably relied on the information in Petitioner's PSR in determining his non-qualification for participation in the RDAP.  Respondent argues that "there is no information whatever in the PSR that documents any illegal drug use by Anderson (much less the sort of regular, non-sporadic use that could constitute a substance abuse disorder) after March 19, 2002."  (Answer, pp. 19-20).  Although the Superior Court conviction in the District of Columbia occurred in July 2004, and that Court imposed drug testing as a condition of probation, the date of the offense was 2002.  It is the date of the offense, not the date of the conviction that is utilized for RDAP purposes.  See id. at p. 20 n.8.

## DISCUSSION

In 1990, Congress charged the Bureau of Prisons with making available "appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  To carry out that requirement, as part of the 1994 Violent Crime Control and Law Enforcement Act, Congress amended § 3621 to require the BOP, subject to the availability of appropriations, to provide

6

residential substance abuse treatment for all "eligible" prisoners.  See 18 U.S.C. § 3621(e)(1)(C).  An "eligible" prisoner is one who is "determined by the Bureau of Prisons to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B) (i) and (ii).  As an incentive for successful completion of the residential treatment program, the period of time a prisoner convicted of a nonviolent offense remains in custody after successfully completing such a treatment program may be reduced up to one year by the BOP.  See 18 U.S.C. § 3621(e)(2).[3]

   The BOP has promulgated regulations at 28 C.F.R. § 550.56 to implement the statutory requirement.  The regulation requires

---

[3]   The Court notes that the language and the goal of Section 3621(e)(2) was not to offer a reward, in the form of reduced prison sentence, to those offenders who committed their criminal acts while abusing controlled substances, but to offer a life-straightening opportunity to those persons who, upon their entry into a "controlled environment" suffer of the ills of drug abuse.  In other words, the sole purpose of Section 3621(e)(2) is rehabilitation of those individuals who suffer from drug abuse at the time-or shortly prior to the time-when they enter a "controlled environment:" this purpose is not related to the problem of substance abuse that the offenders might have had sometime in the past but managed to conquer prior to their entry in a "controlled environment."  See generally, Reuven Cohen, Treating and Releasing the Mule: the Rational, Non-discriminatory Provisions of 18 U.S.C. 3621, 7 S. Cal. Interdis. L.J. 255 (1998) (discussing the history and legislative challenges of RDAP and noting that the final goal of RDAP focuses "on skills the inmate will need to handle and anticipate problems which may emerge upon reintegration to the community through a halfway house, home confinement, or directly into the general population").

that "[t]he inmate must have a verifiable documented drug abuse problem."  28 C.F.R. § 550.56(a)(1).  "The decision on placement is made by the drug abuse treatment coordinator."  28 C.F.R. § 550.56(b).  The BOP application of this regulation is contained in Program Statement 5330.10, which provides, in pertinent part:

> 5.4.1. Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the Residential Drug Abuse Eligibility Interview followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV).  This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.
>
> Additionally, there must be verification in the Pre-sentence Investigation (PSI) Report or other similar documents in the central file which supports the diagnosis.  Any written documentation in the inmate's central file which indicates that the inmate used the same substance, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.

Program Statement 5330.10, Drug Abuse Programs Manual, Ch. 5, § 5.4.1.

The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, "DSM-IV," published by the American Psychiatric Association, defines Substance Abuse or Substance Dependence as a cluster of certain listed symptoms in the same twelve-month period.  The first twelve-month period following Dependence or Abuse is designated Early Remission.  The specifiers of Early Remission do not apply if the individual is in a "controlled

8

environment."  Examples of a "controlled environment" include "closely supervised and substance-free jails, therapeutic communities, or locked hospital units."  DSM-IV at 175-183.

Thus, the BOP has instituted a practice of (1) reviewing the prisoner's history of substance abuse during the twelve-month period precedent entry into a "controlled environment" and (2) examining the prisoner's central file to determine if documentation exists to support a claim of substance abuse or dependence during the twelve-month period immediately preceding the prisoner's incarceration.  Here, Petitioner claims that he was utilizing drugs in the twelve-month period preceding his federal incarceration.

The standards set forth in <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 674 U.S. 837 (1984), govern a court's review of an agency's regulations construing a statute.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

9

Chevron, 467 U.S. at 842-43 (footnotes omitted).  Even where the agency construction appears in an "interpretive" rule not subject to the "notice-and-comment" procedure of the Administrative Procedure Act, the agency's interpretive rule is entitled to "some deference" where it is a permissible construction of the governing statute.  Reno v. Koray, 515 U.S. 50, 61 (1995).

In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court upheld a related BOP regulation interpreting the phrase "nonviolent offense" and categorically excluding certain types of prisoners from participation in the early-release program.

> Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so.  In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design."

Lopez, 531 U.S. at 242 (citations omitted).

Similarly, here, Congress has not spoken to the precise question at issue but has left it to the discretion of the Bureau of Prisons to determine which prisoners "have a substance abuse problem."  The BOP reasonably has turned to the DSM-IV criteria to identify prisoners who have a substance abuse problem.  As the DSM-IV, in turn, dictates that diagnosis is dependent upon the existence of certain symptoms during a twelve-month period, and

that remission is dependent upon the absence of those symptoms unless one is in a "controlled environment," it is reasonable for the BOP to evaluate the existence of those symptoms during the twelve-month period immediately preceding a prisoner's entrance into the controlled environment of long-term incarceration. Moreover, because of the sentence-reduction incentive, it is reasonable for the BOP to review the PSR and central file for documentation corroborating a prisoner's self-report of substance abuse. Thus, the challenged policy and practice of the BOP is a reasonable interpretation of the statute, as most courts agree. See, e.g., Rea v. Sniezek, 2007 WL 427038 (N.D. Ohio Feb. 2, 2007); Shew v. F.C.I. Beckley, 2006 WL 3456691 (S.D. W.Va. Sept. 19, 2006); Montilla v. Nash, 2006 WL 1806414 (D.N.J. June 28, 2006); Quintana v. Bauknecht, 2006 WL 1174353 (N.D. Fla. May 2, 2006); Goren v. Apker, 2006 WL 1062904 (S.D.N.Y. April 20, 2006); Laws v. Barron, 348 F. Supp.2d 795 (E.D. Ky. 2004). Contra, Smith v. Vazquez, 491 F. Supp.2d 1165 (S.D. Ga. 2007).

In this case, there was no abuse of discretion in the BOP's application of the policy to Petitioner. Utilizing the one-year prior to the date of incarceration criteria, the target dates that the Coordinator was examining for Petitioner's drug use was from February 26, 2004 to February 26, 2005. The Superior Court conviction in District of Columbia was for conduct that occurred in March, 2002. While Petitioner was on probation there were no

violations for drug use.  In fact, Respondent has attached Petitioner's PSR as part of the record in this case.  The Court's review of the PSR demonstrates that the BOP did not abuse its discretion, as there is no indication of drug use from February 26, 2004 to February 26, 2005.  Petitioner's later admission that he was using drugs subsequent to 2002 was considered by the Coordinator and denied, as it was revealed during Petitioner's application for entry into RDAP, and was not supported by documentation.

Consequently, since it appears that Petitioner admitted that he had not used drugs since 2002; the PSR indicates that there were no incidents of drug abuse during Petitioner's probation during his service of the Superior Court sentence; and record does not reveal that the BOP was presented with documented evidence of Petitioner's drug abuse during the twelve months preceding Petitioner's entry of the BOP custody, Petitioner has not demonstrated an abuse of discretion by Respondent.

## CONCLUSION

For the reasons set forth above, the Petition must be denied.  Petitioner's pending motions will be dismissed as moot.  An appropriate order follows.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: November 23, 2010